IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HERIBERTO RODRIGUEZ ACOSTA,<br><br>Defendant. | Cause No. CR 22-97-GF-BMM<br><br>ORDER ON DEFENDANT'S MOTION TO SUPPRESS (Doc. 26) |

## INTRODUCTION

Defendant Heriberto Rodriguez Acosta ("Rodriguez Acosta") is charged by Indictment with one count of Conspiracy to Distribute and to Possess With Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846, and one count of Possession With Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1). (Doc. 2 at 2–3.) The charges stem from fentanyl located in a vehicle in which Rodriguez Acosta was a passenger on February 17, 2022. Rodriguez Acosta moves to suppress all of the evidence gathered during or as a result of the traffic stop. (Doc. 26 at 1.) The Government opposes Rodriguez Acosta's motion. (Doc. 30.)

1

The Court conducted a hearing on the motions on August 22, 2023. (Doc. 33.) The Government presented testimony from Federal Bureau of Investigations ("FBI") Agent Ryan Kacher, FBI Task Force Officer ("TFO") James Balkman, Idaho State Police ("ISP") Master Corporal Holly Branch, and ISP Sergeant Justin Scotch. *Id.*

## BACKGROUND

TFO Balkman received information on February 14, 2022, from a known informant. (Doc. 30 at 3.) The informant reported that Hugo Rodriguez ("Rodriguez"), who is Rodriguez Acosta's cousin, was planning to bring fentanyl-laced pills and methamphetamine from Yakima, Washington to the Rocky Boy's Indian Reservation ("RBIR") within the next couple of days. *Id.* TFO Balkman confirmed a text exchange between Rodriguez and the informant that confirmed this information. *Id.* at 3–4.

TFO Balkman relayed information about the vehicle that Rodriguez would be driving to Border Patrol Intelligence Officer Asa Koontz. *Id.* at 4. Idaho's automatic license plate reader system sent out an alert on February 17, 2022, that the vehicle was in Idaho. *Id.* The alert provided the plate number and vehicle description with the comment "DRUG LOAD / DEVELOP OWN PC." (Doc. 28-2.) ISP Master Corporal Branch observed the vehicle and followed it. (Doc. 30 at 4–5.)

The vehicle entered the turn lane without signaling near the intersection of Lakewood Drive and Northwest Boulevard. (Doc. 28 at 6.) ISP Master Corporal

2

Branch initiated a traffic stop at 4:16 p.m. and requested that a canine respond. (Doc. 30 at 5.) ISP Master Corporal Branch testified that the occupants appeared nervous and fidgety upon contact. Law enforcement ran Rodriguez's and Rodriguez Acosta's identifications. Rodriguez's information returned at approximately 4:23 p.m. (Doc. 28-2 at 2.) Rodriguez Acosta's information returned at approximately 4:29 p.m. *Id.*

Kootenai County Probation Officer ("PO") Mark Severance ("Severance") responded at 4:25 p.m. and deployed his canine at 4:29 p.m. (Doc. 28-3; Doc. 28-2 at 2.). The canine alerted to the hood of the vehicle. The ISP officers then requested to pat search Rodriguez. Rodriguez admitted that he had methamphetamine and pills on his person. Law enforcement recovered these substances and arrested Rodriguez. The ISP officers then began a hand search and requested PO Severance to redeploy the canine. (Doc. 28-3.) The canine again alerted to the hood and to an area underneath the radio on the driver's side. *Id.* ISP officers located a box containing 300 fentanyl pills (149.72 g).

## LEGAL STANDARD

The Fourth Amendment safeguards the right of people from unreasonable searches and seizures. U.S. Const. amend. iv. Evidence proves admissible in federal courts if law enforcement's search and seizure has complied with federal constitutional standards. *See United States v. Chavez-Vernaza*, 844 F.2d 1368 (9th Cir. 1987); *Elkins v. United States*, 364 U.S. 206 (1960). A person must have a

legitimate expectation of privacy in the area searched to establish standing to challenge that a search was illegal pursuant to the Fourth Amendment. *Rakas v. Illinois,* 439 U.S. 128, 143 (1978). The expectation of privacy must prove reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1994).

## DISCUSSION

Rodriguez Acosta argues law enforcement lacked reasonable suspicion for the stop, for investigating Rodriguez Acosta, and for the canine sniffs. (Doc. 27 at 1–2.) The Government argues that Rodriguez Acosta lacks standing to challenge the search of Rodriguez's vehicle. (Doc. 30 at 8–9.) The Government further argues that ISP officers possessed reasonable suspicion for the stop, the investigation of Rodriguez Acosta, and the canine sniffs. *Id.* at 9–23.

**I.  Whether Rodriguez Acosta has standing to challenge the stop, the duration of the stop, and the search of Rodriguez's vehicle.**

Rodriguez Acosta contends that a passenger has standing to challenge the constitutionality of a traffic stop because the stop subjects the passengers to a seizure. (Doc. 27 at 11.) The Government agrees but argues that Rodriguez Acosta lacks standing to challenge the search of the vehicle. (Doc. 30 at 7–8.)

A passenger may challenge the constitutionality of a stop. *Brendlin v. California*, 551 U.S. 249, 251 (2007). A passenger also may challenge a "constitutionally improper [ ] detention, or arrest on Fourth Amendment grounds even though, when the seizure occurs, [the passenger] has no possessory or

ownership interest in either the vehicle in which [they are] riding or in its contents." *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1164 (10th Cir. 1995). Passengers may not directly challenge the search of a vehicle. *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000). Introducing evidence obtained through the "search of a third person's premises or property" does not infringe a defendant's Fourth Amendment rights. *Rakas*, 439 U.S. at 134. The Court may suppress evidence against the passenger only if the passenger demonstrates that the stop or their detention had been unlawful. *Id.*

Rodriguez Acosta was a passenger in Rodriguez's vehicle. Rodriguez Acosta possesses standing to challenge the stop and whether officers impermissibly extended the duration of the stop. Rodriguez Acosta cannot challenge, however, the search or the manner of the search of Rodriguez's vehicle. *Twilley*, 222 F.3d at 1095 (citing *Eylicio-Montoya*, 70 F.3d at 1162).

**II.  Whether ISP Master Corporal Branch had probable cause for the traffic stop based on the traffic violations that she observed.**

A traffic stop constitutes a seizure. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Seizures are "reasonable under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred." *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006). Law enforcement also may stop a vehicle if they have reasonable suspicion that a person inside "has committed, is committing or is about to commit a crime." *United States v. Nault*, 41 F.4th 1073,

5

1079 (9th Cir. 2022). "Reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form the basis for particularized suspicion." *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019) (internal quotation marks omitted).

Rodriguez Acosta argues that ISP Master Corporal Branch stopped Rodriguez for failing to use a blinker in violation of Idaho Code § 49-808(2). Rodriguez Acosta argues that that the "5 second" rule for signaling only applies if the vehicle is turning from a parked position or traveling on a controlled-access highway. Rodriguez Acosta then argues that the "100 feet" rule only applies to turning movements, not changing lanes. Rodriguez Acosta contends that Rodriguez was moving into a new lane—not turning—so neither the "5 second" nor the "100 feet" rule applies. The Government counters that ISP Master Corporal Branch observed Rodriguez's vehicle cross over the solid white line at Exit 11 and cross back over without signaling. The Government also argues that any time a vehicle moves right or left upon a highway, it must signal such movements.

The Idaho Court of Appeals has held that "whenever a vehicle moves to the right or to the left [upon a highway] because one lane splits into two lanes, or two lanes merge into one lane, an appropriate signal is required pursuant to I.C. § 49-808." *Idaho v. Dewbre*, 991 P.2d 388, 391 (Idaho Ct. App. 1999). In *Dewbre*, a highway lane opened into two lanes to allow for passing. *Id.* at 389. A sign directed

6

slower traffic to stay right. *Id.* The Idaho Court of Appeals concluded that failing to use a turn signal when entering the right-hand lane violated Idaho Code § 49-808. *Dewbre*, 991 P.2d at 391. The Idaho Court of Appeals held the same statute unconstitutionally vague when applied to two lanes merging into one. *See Burton v. Idaho*, 240 P.3d 933, 936 (Idaho Ct. App. 2010). The court distinguished *Dewbre* on the basis that arrows directing motorists to move back to the left lane clearly indicated which lane ended in *Dewbre*. *Id.* The Idaho Court of Appeals similarly held that a motorist violated Idaho Code § 49-808 by failing to use a signal where roadway construction made it obvious that a lane was temporary. *See Idaho v. Spies*, 335 P.3d 609, 614 (Idaho Ct. App. 2014).

The lane that Rodriguez was traveling in expanded to two lanes near Lakewood Drive. Rodriguez moved into the turn lane. A turn lane is a lane where the roadway construction clearly indicates that the lane is temporary. This movement required a signal under the reasoning of *Dewbre* and *Spies*. Rodriguez began moving right into the turn lane without signaling. (Doc. 28-1, 31:22 – 31:40.) This movement constituted a violation of Idaho Code § 49-808. ISP Master Corporal Branch had reasonable suspicion for the traffic stop based on her observation of this violation.

### III. Whether the ISP officers impermissibly extended the duration of the stop.

Rodriguez Acosta argues that performing the canine sniff impermissibly extended the stop. He contends that the stop should have terminated around 4:23

p.m. when officers received the return on Rodriguez. The Government argues that the stop was ongoing when officers deployed the canine at approximately 4:29 p.m. because the officers were waiting on the return for Rodriguez Acosta. Rodriguez Acosta replied that identifying him cannot justify the delay because it falls outside the mission of the stop. The Government counters that the ISP officers had reasonable suspicion to investigate Rodriguez Acosta based on the collective knowledge that the vehicle was involved in drug trafficking.

### A. Whether the ISP officers lacked reasonable suspicion to investigate Rodriguez Acosta even though the collective knowledge doctrine applies.

Law enforcement may order passengers out of the vehicle in a routine traffic stop. *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (citing *Pennsylvania v. Mimms*, 434 U.S. 106 (1977)). Law enforcement also may perform a *Terry* protective pat down if they have reasonable suspicion that the passenger is armed and dangerous. *Johnson*, 555 U.S. at 332 (citing *Knowles v. Iowa*, 525 U.S. 113, 117–118 (1998)). However, "[a] demand for a passenger's identification is not part of the mission of a traffic stop." *Landeros*, 913 F.3d at 868.

The Government relies on the collective knowledge doctrine and the principle that passengers "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing." *Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999). The collective knowledge doctrine applies where a member of law enforcement possesses direct personal

knowledge of facts that give rise to reasonable suspicion and directs or requests that another officer, not otherwise involved in the investigation, act based on that suspicion. *United States v. Ramirez*, 473 F.3d 1026, 1033 (9th Cir. 2007). The Court considers "the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [acts]." *United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir. 1986).

Rodriguez Acosta counters that the collective knowledge doctrine cannot apply because the license plate reader system provided only minimal information to the officers. Rodriguez Acosta argues that there was not adequate communication between the law enforcement officers for the collective knowledge doctrine to apply. Rodriguez Acosta contends that ISP officers lacked any specific knowledge about the informant, the details of the drug investigation, or the reliability behind the "drug load" notification.

The Ninth Circuit has determined that "the collective knowledge rule applies where an officer makes an investigatory stop based *in part* on information or directions from other law enforcement officials." *Id.* (emphasis added). "Although a request to make a stop often is part of the circumstances that lead to application of the doctrine, the Ninth Circuit requires only that the [ ] agents communicate[]." *United States v. Takatsy*, CR-17-08163-PCT-DGC, 2018 U.S. Dist. LEXIS 110071,

9

at *18 (D. Ariz. 2018). Application of the collective knowledge doctrine "requires only limited communication to 'distinguish officers functioning as a team from officers acting as independent actors who merely happen to be investigating the same subject.'" *Id.* (quoting *Ramirez*, 473 F.3d at 1033).

Agent Ryan Kacher testified that he communicated with TFO Balkman about his investigation into drug trafficking on the RBIR. Agent Kacher further testified that he connected TFO Balkman to his confidential informant. TFO Balkman testified that he relayed information to Border Patrol Intelligence Officer Asa Koontz about the controlled buy with Rodriguez and the investigation into his drug trafficking. TFO Balkman never spoke directly with ISP officers.

Officer Koontz entered information regarding Rodriguez's vehicle into the ISP system. This information identified the vehicle by make, model, color, year, and plate number. Officer Koontz's electronic information further communicated that the vehicle was suspected of carrying a drug load and officers should develop their own probable cause to stop it. This communication proves sufficient for the collective knowledge doctrine to apply, even given the direction to officers to develop their own probable cause. *See Takatsy*, 2018 U.S. Dist. LEXIS 110071, at *5, 17–18. The district court in *Takatsy* determined that sufficient communication existed to apply the collective knowledge doctrine where the investigating agents told the stopping officer that "the vehicle was connected to a narcotics trafficking

organization, but that he would need to develop his own reasonable suspicion to stop the vehicle and probable cause to search it." *Id.*

TFO Balkman also testified, however, that he had no knowledge of Rodriguez Acosta before the stop. Agent Kacher similarly testified that his investigation had not turned up any information about Rodriguez Acosta. ISP Master Corporal Branch testified that she routinely seeks identification of every occupant of the vehicles that she stops. ISP Master Corporal Branch admitted that she had no reason, independent of the electronic alert in the ISP system, to suspect that Rodriguez Acosta had committed any wrongdoing when she asked for his identification. Rodriguez Acosta's identification falls outside the mission of the stop under *Landeros*. 913 F.3d at 868. No law enforcement officer had any information about Rodriguez Acosta, and ISP Master Corporal Branch admitted she had no reason to suspect that Rodriguez Acosta was engaged in criminal activity. Waiting for Rodriguez Acosta's identification return cannot justify the six-minute delay before the canine sniff.

## IV. Whether the canine sniff prolonged the stop, and even if it had, whether ISP officers had reasonable suspicion for the canine sniff.

Use of a trained narcotics canine "during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Law enforcement "may conduct certain unrelated checks during an otherwise lawful traffic stop." *Rodriguez v. United States*, 575 U.S. at 355. The stop may become unlawful if those checks prolong the stop "'beyond the time reasonably

required to complete th[e] mission' of issuing a [ ] ticket." *Id.* at 354–355 (quoting *Caballes*, 543 U.S. at 407). The mission of a traffic stop includes "'ordinary inquiries incident to [the traffic stop].'" *Rodriguez*, 575 U.S. at 355 (quoting *Caballes*, 543 U.S. at 408.) A canine sniff "is not fairly characterized as part of the officer's traffic mission." *Rodriguez*, 575 U.S. at 356. The U.S. Supreme Court rejected the argument that officers can prolong a stop to facilitate a canine sniff if the officer pursues the traffic-related purpose for the stop with reasonable diligence. *Id.* at 357. Law enforcement must have reasonable suspicion to perform a canine sniff that would extend the stop beyond its mission. *See id.* at 358.

Reasonable suspicion means "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Raygoza-Garcia*, 902 F.3d 994, 999–1000 (9th Cir. 2018). Reasonable suspicion "is not a particularly high threshold." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). "'[A] mere hunch is insufficient," but "the likelihood of criminal activity need not rise to the level required for probable cause.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 272 (2002)).

The ISP officers received a return on Rodriguez at 4:23:46 P.M. The canine sniff occurred approximately six minutes later. ISP Master Corporal Branch testified that she was still working on processing the infractions during this time. The U.S. Supreme Court clarified in *Rodriguez* that it "is not whether the dog sniff occurs

12

before or after the officer issues a ticket . . . but whether conducting the sniff 'prolongs'—i.e., adds time to—'the stop.'" *Id.* at 357. The canine sniff did not add time here. Master Corporal Branch testified that she still was processing the traffic stop during the six-minute span between receiving Rodriguez's return at 4:23 p.m. and the canine sniff at 4:29 p.m.

Further, even if the canine sniff added time, the ISP officers had reasonable suspicion to conduct the canine sniff under the collective knowledge doctrine. Sufficient communication existed between the law enforcement agencies for the collective knowledge doctrine to apply. *Ramirez*, 473 F.3d at 1029, 1036. ISP Master Corporal Branch knew from the license-plate "drug load" notice in the ISP system that the vehicle was suspected of carrying drugs. ISP Sergeant Scotch testified that he knew that the vehicle was suspected to have 1000 fentanyl pills in the engine compartment. TFO Balkman and Agent Kacher knew that Rodriguez had sold fentanyl to a confidential informant and told the confidential informant that he would be traveling to the RBIR in Montana from Washington with fentanyl pills around February 14, 2022. Accounting for the collective knowledge of the law enforcement officers, the ISP officers possessed reasonable suspicion for deploying the canine. The canine's positive alert and the subsequent discovery of methamphetamine and pills on Rodriguez provided probable cause to search the vehicle. To the extent Rodriguez Acosta challenges the duration of the manual

13

search and redeployment of the canine, this challenges the manner of the search. Rodriguez Acosta lacks standing to make such a challenge. *Eylicio-Montoya*, 70 F.3d at 1162.

## CONCLUSION

The Court will deny Rodriguez Acosta's Motion to Suppress (Doc. 26.) The Government has demonstrated that reasonable suspicion existed for the stop based on Rodriguez's traffic violation. The Government also has established that law enforcement did not impermissibly prolong the stop because ISP Master Corporal Branch still was processing the stop when the canine sniff occurred. Further, even had Rodriguez Acosta established that the canine sniff added time to the stop, the Government established reasonable suspicion under the collective knowledge doctrine to deploy the canine.

## ORDER

Accordingly, **IT IS ORDERED** that Rodriguez Acosta's Motion to Suppress (Doc. 26) is **DENIED**.

DATED this 5th day of September, 2023.

_____
Brian Morris, Chief District Judge
United States District Court